HI. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. All right, our first case this morning is Khalil versus the Department of Agriculture. Hold on just a second. We do have a motion. We have other things to consider first this morning. I recognize Judge Proust. Thank you. This morning, Judge Rader, I move the admission of Bart Alex Gerstenblith, who is a member of the bar in good standing of the highest courts of Maryland in the District of Columbia. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. I'd just like to say briefly, Bart has been with us now in our chambers for almost a year and we've enjoyed and benefited from his intellect, his enthusiasm, his good humor, his love of learning and love of the law. And best of all, we've appreciated his being part of our family and even more than that, his family. Stephanie, his wife, and Evan, his adorable young son, becoming part of our chamber's family too. Do you suppose we ought to retire and debate this motion in private or what do you think? Well, I've given the motion considerable thought. I was forewarned that the motion would be forthcoming this morning and so I've sort of plumbed the depths of my experience here and I've come to the conclusion that the motion, in my vote, the motion should be granted. I have had an opportunity over the last almost 12 months to get to know Mr. Gerstenblith, both personally and as an attorney, and I second what Judge Proust said in her motion. I hope that the court will be able to grant the motion and I look forward to many years in the future, if you're coming back, to stand in front of us on that side of the bench and to display your legal skills and also to act as an officer of the court with the dignity and the talent that I know you will. We grant the motion then with enthusiasm. Our clerk will administer the oath. Please raise your right hand. Do you solemnly swear or affirm that you will support yourself as an attorney and counsel of this court, upright and impartial to the law, and that you will support the Constitution of the United States of America? I do. Congratulations to both of you to the bar and to the United States Court of Appeals. Welcome. Now let's move to Khalil v. Department of Agriculture, Mr. Chusey. Good morning, Your Honors. Your Honors, Mr. Khalil was suspended without pay for 14 days based on charges that he disclosed to his agency and to a district court his belief that the agency was engaging in fraud on the court by withholding a report he had written which was inconsistent with the agency's litigation position. The agency also charged that Mr. Khalil failed to follow his supervisor's instructions when she asked him to tell her about his disclosures and he didn't respond. In the initial proceedings before the board, the administrative judge dismissed. On review, the board reversed and remanded. Following this court's decision in unis, the board found non-frivolous allegations that Mr. Khalil had made a protected disclosure which was a contributing factor in his suspension. But those disclosures did not include his alleged disclosure to the court, correct? No, Your Honor. That's what the agency says, but that clearly can't be the case because the disclosures in the suspension are the disclosures to the court. If the board considers the exhaustion requirement before the OSC to consist of the materials submitted to the OSC, the suspension is based upon disclosing to the court. Now Mr. Khalil says that he didn't make that disclosure to the court, but there's no question that that's what the suspension was based on. The suspension was based upon Mr. Khalil's calling chambers. Can there be any question that an attorney would understand you don't call chambers? Well, actually, yeah, I think there can be a question because Mr. Khalil and the board have this available to them. Would you ever call my chambers on a matter dealing with litigation? That I was representing somebody? Not in whatever circumstances. Well, Mr. Khalil checked with the Bar Association of the District of Columbia, and he was told that if the Justice Department, which was representing the Department of Agriculture, if the Justice Department did not remedy the situation, if Mr. Khalil believed as an attorney that matters were being withheld from the court, then he should call the court if the Justice Department would not bring that. So that's an interesting idea. In other words, if I think personally that something's going wrong, I can, on my own judgment, intervene in a court proceeding. Well, I don't know what intervening means. I mean, well, call, disclose information, run contrary to the position of your agency. Just on the basis of what I think's important, what if my agency has considered everything that I think's important and still maintains its position, as I guess really happened here? Why is my personal judgment going to override the overall position of the agency and the sanctity of the court proceedings? Because, Your Honor, the Whistleblower Protection Act is predicated on the employee's belief that the agency is engaging in a violation of law, rule, and regulation. It's predicated on his belief. If, in fact, Mr. Khalil was correct, if, in fact, the agency was either unaware of his report, which is what he believed, or was aware of his report, but was not informing the judge of its existence, then he believed that an obstruction of justice was being committed. And the board, confronted with that fact pattern in this case, held or found a non-frivolous opinion. Why didn't he go to the press instead of the court? You know, the agency said, why didn't he go to the office of special counsel? Why didn't he go to the office of Mr. General? In other words, there are ways to go that might not have involved intervening in the integrity of the court processes. Well, if it, in fact, is intervening in the integrity of the court process, or, as Mr. Khalil believed, he was upholding the integrity of the court process. What I don't understand about your argument on appeal, however, is that you want us to send it back because your position here is that they shouldn't have suspended him because they suspended him because he provided a protected disclosure, correct? Did you make that argument to the administrative judge? Before the administrative judge, you were not arguing that his disclosure, his alleged disclosure to the court, was a protected activity, were you? Well, Mr. Khalil was pro se. Well, was Mr. Khalil arguing that before the agency? No, because the administrative judge made it very clear that the only issue that he was going to consider in this hearing was whether the agency had met its burden of proof.  Your argument here is they can't have suspended him for this because they were suspending him for engaging in protected conduct. Correct. Did he make that argument to the administrative judge? Of course. I thought the answer is no, that all he argued to the administrative judge is, I never went to the court, not that even if I went to the court, you can't suspend me for doing that because that was a protected disclosure. Yes, Your Honor. Did he make that second argument? Well, the administrative judge defined what the issue was that he was going to consider. Yes, would they have taken the suspension in any event? Right. And the answer to that from your client that I think you're making on appeal, the argument is they can't get away with suspending him because, indeed, the court disclosure was a protected disclosure. Correct. Was that argument made by Mr. Khalil to the court, to the A.J. Below? Well, you know— You can answer that yes or no, Katie. I— Maybe you don't want to. I think he tried to make that argument as best he can. But don't you say in your brief at page 13, Khalil has never claimed he made protected disclosures to the court. Oh, well, yes, that's true. Now, if you go back and look at the deciding official's writing— Right. This is Mr. Little in the record at 839. Mr. Little says you, meaning Mr. Khalil, have raised the defense that you were engaging in protected whistleblowing activity when you called the judge's chamber. Right. Isn't there a disconnect between the contention that you were whistleblowing to the judge and the statement in your brief that you never made protected disclosure to the court? I got confused. No, and I can understand the confusion. What Mr. Khalil said, and the administrative judge rejected this contention, although, in my view, it's irrelevant, Judge Post. The issue that you're raising I don't believe is pertinent because it doesn't matter whether Mr. Khalil told chambers what the agency accuses him of telling chambers or not because the agency perceived him as a whistleblower. The agency believes that Mr. Khalil called the judge's law clerk and told the judge's law clerk that the agency was engaging in fraud on the court when it was withholding his report. But you have to have alleged at some point. It's not a matter of just what the agency believes. It's what your client has alleged. You can have whistleblower activity that the agency is trying to stomp on, but if nobody comes in and alleges this is protected activity and I should be protected, then you can't find the agency guilty of anything. Where did your client allege that this disclosure to the court was indeed a protected activity and therefore the agency violated the law by relying on that protected activity to suspend your client? I believe, Judge Post, that that's not an accurate statement of the law or the facts here. I don't believe that Mr. Khalil has to admit to conduct which he doesn't think he engaged in and the court will look to the admission as one of his elements of proof. But that's what you're asking us to do, right? No, I'm not. It's clear that the agency suspended Khalil for making these statements. They suspended him because he interfered with a court proceeding. He interfered with a court proceeding by calling chambers. But it's the act, the no-no, the thing that he did wrong was not making a protected disclosure to sit call for Grundisman, if I pronounce his name correctly. Grundiman. That he is loud and clear saying, at least within the department, I believe that your litigating position is engaging in fraud on the court. That's what he told Grundiman. And that disclosure to Grundiman and to Sitkov is a non-frivolous allegation of a protected disclosure. That's all we've found yet. But the agency said, you can go ahead and make that disclosure, a substance of that disclosure, but we are going to suspend you for 14 days because you violated the cardinal rule, which is you're not supposed to interfere with litigation. They're saying, we don't care what it was you said to the judge. But that's not true. That is not true because they have repeatedly said that he breached his obligation to the agency by telling the court that the agency was engaging in fraud on the court. In fact, the administrative judge said that. When Khalil said that he was connected to chambers by accident and that he tried to tell the judge in his presentation that he didn't say to chambers what the judge says, what the agency says he said. The administrative judge says, well, that doesn't excuse it. What does he allege once he got through to the judge thinking it was a secretary or somebody else? What did he say? Ask what time of the day it was? What the weather was? What did he say? What's the record show he said? The record doesn't show anything on that? He testified that he was trying to get to the attorney and that he told the law clerk that it was important that he get to the attorney. And that's what he said. He testified that he told the law clerk nothing that would have justified the agency's challenge to him. Now, the administrative judge found that that wasn't true and that, in fact, he did tell the law clerk that the agency was engaging in fraud on the court. And he said that even if Khalil was connected to the law clerk by accident, it doesn't justify his telling the law clerk that his agency was engaging in fraud on the court. The charge of interference is based upon the charge of disclosing that the agency was engaging in fraud on the court. And that is a protected disclosure. You wish to preserve some of your rebuttal time, Mr. Chiu. I did. You know, I do. Before I do this, you know, two months ago the court decided the Greenspan case. And I know Judge Rager that you dissented in that. But the Greenspan case, I think, makes the same point. And that is that where the disclosure, where the action is based upon the disclosure, then the agency can't meet its burden of proof. Because the idea that the agency can prove that it would have taken the same action absent the disclosure, where the action is based on the disclosure, is simply an impossibility. Thank you, Mr. Chiu. Thank you. Mr. Simkin. May it please the court, the court should affirm the judgment of the MSP. Start with that last point. If, indeed, the disclosure to the court is the basis for the discipline, how can they avoid the charge that that was whistleblowing? Well, it turns on the specific facts involved in it. Certainly, if an agency, if a whistleblower claims that he made disclosures A and B, the agency can't turn around and attempt to prove his defense by showing that he made, that it was somehow improper that he made disclosure A and disclosure B. That's not what occurred in this case, though, however, as Judge Clevenger pointed out in his questioning. The charge, of course, it's undisputed that the petitioner was disciplined for the statements he made to the court. That's, of course, clear. It's also clear that the charging official and the deciding official both noted the content of his disclosures to the court. But the essential point is that the rationale or reasoning behind the suspension on that charge was not the content of his disclosures to the court, but his conduct with respect to making those statements. So if Mr. Khalil had alleged from the get-go that I didn't make this disclosure to the court, but in the alternative, if you conclude that I did make that disclosure, that disclosure to the court was protected activity, then your position in this case would be different, correct? That would be, yes, that would be correct. And we would submit he has not. Yeah, but just to carry that on. So you would agree that if he had disclosed, if he had claimed that his alleged conversations with the court were protected activity, then you would not be allowed to suspend him on that basis if, indeed, he's correct. I mean, we'd have to adjudicate whether or not it was protected activity. No, no, I would actually disagree with that, Your Honor. That would perhaps satisfy the exhaustion requirement that he made these charges to the OSC and then subsequently to the court. But even if he had done so, the essential distinction still remains that in proving his defense, the agency could show that it would have taken the personnel action anyway because – or at least Mr. Khalil's peculiar argument that the defense can't be based upon a protected disclosure itself wouldn't apply. Because, again, the discipline was based on the conduct surrounding the disclosure, not the substance of the disclosure itself. Isn't this a pretty technical distinction? I mean, you're saying, well, we charged him with interfering with litigation, not any specific disclosure. But the disclosure was the interference with the litigation. Isn't that a – I understand the distinction you're trying to make, but isn't that cutting things a little fine? Not at all, Your Honor. Suppose another case – I can prove our point by hypothetical. Say we have another case in which a government employee sees a newspaper article about some upcoming argument and opposite facts, the employee is very pro-government, believes strongly in the government's arguments and takes it upon himself to contact the judge or the chambers directly to advocate in favor of the government. Perhaps he even accuses the other side of misrepresenting the facts. Clearly, that conduct would be just as improper and subject to discipline as what we have here. And that illustrates that it's not really the content of the statement. It's the conduct respecting it that is improper. So if it was concluded that whatever he said, his telling the court, blah, blah, blah, that all of this, his conduct, it was whistleblowing and it was protected activity, you're saying you could still discharge or suspend him for that conduct? Well, not for the substance of it. Even assuming that he's setting aside all the timeliness arguments. But that's like what if you go and tell your congressman and blow the whistle and say there's malfeasance in my government office and you go tell your congressman? What you're saying is even if that's whistleblowing activity and even though that's protected activity, you could still fire him because your manual says you shouldn't talk to congresspeople? Well, I'm not aware that there is such a provision, but if the statement was a violation of some agency regulation and the discipline was based upon that violation and not the content of the statement. But when you get contact, protected activity, a protected disclosure is not entirely the content, right? The requirement is you have to tell it to a certain group of people in order for it to be protected whistleblowing activity. Well, no. The WPA is based upon, what is protected is based upon the content of the disclosure. In other words, it has to reasonably reveal evidence of fraud, waste, abuse, gross mismanagement. But it has to be that content. But it has to be to certain individuals. As well. Also to certain. So it's based upon both the recipient and the content of the message. And this court has held in other cases and other contexts that improper, destructive conduct is not shielded simply because of the presence of a protected disclosure. You have a case? You say we've held? What case has held that? Well, for example, Judge Rader's dissent in the recent Greenspan decision essentially noted that proposition. Greenspan cited. This is a dissent, though. This is a dissent, but Greenspan, the proposition was recognized by the majority in that panel. In fact, they even cited this court's decision in Watson, I believe. Watson v. Department of Justice, which involved a case where a border patrol agent was privy to some wrongdoing in the context of his job. He, 12 hours later, disclosed that wrongdoing by his fellow border patrol agent and alleged that that disclosure was protected. And the court assumed it was. Indeed it was. But he was nevertheless removed upon one of the charges being that he waited too long, 12 hours, to make the disclosure. He delayed too long. And the court in that case recognized the distinction between conduct and content of the message and that discipline can necessarily be based upon facts that would otherwise be intertwined with or would otherwise support a protected disclosure. So you can make a protected disclosure, but make it in such an obnoxious manner that the manner of making it becomes the issue, not the disclosure. Right. And in Greenspan, Your Honor, I made that observation. The majority didn't reject it on the substance of that, but the majority held that on the record in that case, those charges, sort of disrespectful conduct, wasn't made in the charging document. So what should Mr. Khalil have done here? What if there had really been fraud, not just his judgment that something had been overlooked, but there was real fraud and something was really being covered up, what should he do? He could have done a number of things, Your Honor. Of course, as the deciding official noted, the first recourse, the most obvious recourse, would be to the Justice Department counsel. If he has a problem with the counsel, he can go to that person's supervisor and that person's supervisor. So there are a number of ways he can go to the OGC attorneys. Your Honor, I can't think of any case with similar faceties where it would be appropriate to contact directly a judge or a judge's chambers. Even assuming hypothetically that all other avenues of disclosure or foreclosure, can't go to the press, can't go to the IG, can't go anywhere, at least the employee could call the clerk of the court and say, not the judge's law clerk, but the clerk of the court and say, I have information that I think is very relevant to this pending case. How do I get it in front of the judge? We're not saying that would be appropriate in all circumstances, but at least that would be a way of getting this type of information to the judge's chambers in a manner that would ensure that all parties are involved and have notice of the information and arguments being made to the court. Mr. Simpkin, the only evidence that I saw that the agency either has a policy of punishing people who interfere with litigation or did it is in the AJ's decision where he says, the charge of interfering with litigation was an outrageous offense. This is at page 12 of the joint appendix. Especially for an attorney, this offense alone supplies clear and convincing evidence that the agency would have suspended the appellant in the absence of any whistleblowing disclosures. Isn't the AJ sort of deciding the issue instead of letting the record do it? How do I know? I mean, I realize that interfering with litigation, you know, smacks of something that's outrageous, but is this the first time it's ever happened? How can I be certain that there was no testimony from the agency, was there, that they would have taken this action regardless of the disclosure? Regardless of the disclosure? In the absence of a whistleblowing disclosure. Well, again, the charging document, even the proposing document and the charging document, although they raised the content of it, they explained that the improper, the basis for the charge and the reason why it was improper was the way in which it was made. In fact, I would point out that the deciding official, Mr. Little, noted that the petitioner's conduct would be just as improper if it had been done by the plaintiff's counsel. Of course, the plaintiff's counsel can't give whistleblowing disclosures. And so that underscores that if the petitioner had contacted the chambers and simply made statements that were not, as a matter of law, protected disclosures, the conduct would just as well have been improper. Unless there's any further questions from the court, I'll simply conclude my argument. Thank you, Mr. Simkin. Mr. Chusi, you have a little more than two minutes remaining. Thank you, Your Honor. You know, I believe that the government's argument here is really antithetical to the Whistleblower Protection Act.  And just a reminder that the WPA protects any disclosure. The content is covered in the next sentence, which is that he has to reasonably believe that it evidences a violation of law, rule, or regulation. So it's any disclosure. For the government to say, well, but he should have made it this way, or he should have made it that way, or this way would have been better, but not the way he did it, is just antithetical. The Whistleblower Protection Act doesn't give the government the authority to second-guess. Well, but there's got to be a limit on that, doesn't there, Mr. Chusi? If I decide that I'm going to make a disclosure to Judge Clevenger by slugging him in the side of the face and my disclosure is I don't really like you very much, I mean, that's still an assault, isn't it? Yes, Your Honor, but Mr. Kalil, I mean, that's— If you have reason to believe that there's an inadequate smoke protection system in a theater, you can't make the disclosure by shouting fire. That's correct, but if you go to— Always a bitter hypothetical from my colleague here. One of my failings as well. But clearly he didn't do any of that. I mean, he made the disclosure, or the agency believes that he made the disclosure verbally, and the government is arguing and the board found that he should have made his verbal disclosure some other way. So it's not a question such as the distinction that you raised in Greenspan, where the doctor got up in the middle of a joint meeting, a public meeting— And embarrassed people. And excoriated the officials who were sitting there. And reasonable people maybe could argue about whether that's an appropriate way, but this is different from that. He's supposed to tell. The WPA assumes that the employee is going to take it upon himself and tell. And in Greenspan— Any final comments, Mr. Chusi, as our time has expired? Well, he takes the risk that there's going to be repercussions. Thank you.